## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CARMELLA PIERCE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 11-846-SLR |
| | ) |
| PATRICK DONAHOE, | ) |
| Postmaster General | ) |
| | ) |
| Defendant. | ) |

Timothy James Wilson, Esquire of The Wilson Firm, Newark, Delaware.  Counsel for Plaintiff.

Charles M. Oberly, III, Esquire, United States Attorney, District of Delaware, and Patricia C. Hannigan, Esquire, Assistant United States Attorney, District of Delaware. Counsel for Defendant.

## **MEMORANDUM OPINION**

Dated: July *26* , 2013
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

On September 20, 2011, plaintiff Carmella Pierce ("plaintiff") filed the present

action against Patrick Donahoe ("defendant"), Postmaster General of the United States

Postal Service ("the USPS"), alleging that her employment was terminated based on

age discrimination under the Age Discrimination in Employment Act ("ADEA")[1] and

disability discrimination under the Rehabilitation Act ("RA").[2] (D.I. 1) Plaintiff further

alleges harassment on the basis of her age and disability. (Id.) Plaintiff's complaint

seeks a declaratory judgment that defendant violated her rights, as well as various

damages, including lost wages and reasonable attorney fees. (Id.) The court has

jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

The parties have concluded discovery, and presently before the court is

defendant's motion for summary judgment. (D.I. 24) For the reasons that follow, the

court grants defendant's motion for summary judgment.

## II. BACKGROUND

### A. Plaintiff's Employment with Defendant

Plaintiff, born November 21, 1947, is a 65-year-old former employee of the

USPS. (D.I. 25 at A-19) The USPS hired plaintiff in 1999 (id. at A-3), to work at the

Processing and Distribution Center in New Castle, Delaware ("the New Castle facility").

(D.I. 24 at 2) Plaintiff was hired, and remained throughout her tenure at the USPS, as a

---

[1] 29 U.S.C. § 621 et seq.

[2] 29 U.S.C. § 701 et seq.

1

"casual" employee. (D.I. 25 at A-3) According to the USPS position description, casual employees "performed mail handling, mail processing, mail delivery, mail collection, mail transportation, and custodial functions, or a combination of such duties on a supplemental basis." (Id. at A-33) The parties agree that at the time of plaintiff's employment, a casual employee was hired for a ninety-day assignment as either a clerk or mail handler, and then required to take seven days off from work before becoming eligible for a new assignment. (Id. at A-25) However, a new assignment was not guaranteed and casual employees did not receive benefits. (Id. at A-3, A-27; D.I. 24 at 2) The parties also agree that casual employees did not acquire "seniority" regardless of how long they worked at the USPS. (D.I. 25 at A-8) Thus, all casual employees were treated the same with respect to their status as employees. (Id.) While at the USPS, plaintiff worked as both a clerk (casing the mail and running machines) and a mail handler (lifting mail and throwing it into bins). (Id. at A-3)

Between 1999 and 2000, plaintiff states that she sat for the USPS exam in New Jersey to apply for permanent placement at the USPS. (Id. at A-10) However, she was never contacted for a permanent position and maintained her status as a casual employee. (Id.) She also asserts that she received "Certificates of Appreciation" in October 2004, January 2005, and December 2005 for her job performance. (Id. at A-9)

Between 1999 and February 2009, due to her changing assignments, the parties agree that plaintiff had several different supervisors including Sherri Wiggins ("Wiggins") (id. at A-19), Donna White ("White") (id. at A-4, A-7), and Angela Garland ("Garland") (id. at A-19). Wiggins, White, and Garland reported to Sharyn Faison ("Faison").[3] (Id. at

---

[3] Faison was never plaintiff's direct supervisor. (D.I. 25 at A-29)

A-29) Plaintiff also interacted with many coworkers including Chauncey Harris ("Harris") and Regina Pinkston ("Pinkston"). (*Id.* at A-7, A-9; D.I. 28 at B-5) Plaintiff recollects mistreatment by supervisors White and Faison and coworker Harris and suggests the poor treatment was due to her weight and hearing loss. (D.I. 25 at A-5, A-7) Plaintiff alleges being "screamed at" and treated "like a dog." (*Id.* at A-5)

On December 27, 2008, plaintiff began a casual clerk assignment. (*Id.* at A-26) On January 26, 2009, a few days before her termination,[4] she underwent an audiometric evaluation documenting mild to profound hearing loss in both ears, though it was worse in her right ear. (D.I. 28 at B-1) The parties agree that plaintiff never requested an accommodation concerning her hearing while employed at the USPS, nor did she receive an audiometric or other medical evaluation during her employment at the USPS prior to January 2009 indicating the extent of her hearing loss. (D.I. 25 at A-10, A-26) The parties disagree as to whether the USPS was aware of plaintiff's hearing disability. (D.I. 30 at 1) Specifically, the parties dispute whether plaintiff notified her supervisors that she could not hear them (D.I. 25 at A-26); whether she specifically informed the postmaster, Leonti, after setting up an appointment with him, that she "had a hearing problem" (D.I. 24 at 4; D.I. 27 at 4-5); and whether she wore a hearing aid at any point while employed by the USPS (D.I. 24 at 5; D.I. 28 at B-5). Defendant asserts that the first notification of plaintiff's hearing disability was not until a "redress" post-termination meeting on April 23, 2009. (D.I. 24 at 5; D.I. 25 at A-20, A-26, A-30)

___

[4] Plaintiff indicated that, at some point, she became aware of her impending termination due to a meeting of all casual employees with an MDO supervisor, who informed them that "when the assignment was over, that everybody would go." (D.I. 25 at A-9)

## B. Circumstances of Employment Termination

In 2008, David Robinson ("Robinson"), manager of the New Castle facility, decided to entirely phase out casual employees to comply with a USPS mandate to cut costs because of reduced mail volume. (D.I. 25 at A-19, A-25, A-26) The parties agree that all individuals in casual clerk positions were terminated by April 10, 2009 and that all casual mail handlers were terminated by September 25, 2009. (*Id.* at A-26) The parties also agree that the New Castle facility ended its practice of maintaining casual employees entirely by September 25, 2009 by terminating or not renewing assignments for all remaining casual employees. (*Id.*)

Robinson delegated to Faison the decision of who to terminate first. (*Id.* at A-25-A-26) Plaintiff was originally included in the first round of terminations effective January 31, 2009 by her immediate supervisors, but Faison allegedly disagreed on the basis of plaintiff's "excellent attendance record." (*Id.* at A-30) As a result, plaintiff remained employed in her position for an extra week. (*Id.*) The parties agree that plaintiff was terminated on or around February 7, 2009. (*Id.* at A-19)

## C. Plaintiff's Explanation for Why She Believes Age and Disability Prompted Her Termination

At the time of her termination, plaintiff was 61 years old and had recently documented hearing loss. (D.I. 25 at A-19; D.I. 27 at 4) She maintains she was released from employment prior to other casual employees due to her age and hearing disability because she was older than all but one of her coworkers and no other casual coworkers were disabled. (D.I. 27 at 4) Plaintiff's coworker, Pinkston, declared that plaintiff was mistreated because of her hearing disability. (D.I. 28 at B-5) Pinkston also

4

indicated that plaintiff wore a hearing aid while employed at the USPS in November 2007, but defendant disputes this. (*Id.*; D.I. 30 at 2)

## D. Casual Employee Demographics of the USPS

At the beginning of 2009, twenty casual clerks were employed at the New Castle facility.[5] (D.I. 25 at A-28) Prior to plaintiff's termination, at least ten casual clerk employees were terminated, of which all but one were younger than her.[6] (*Id.* at A-26) On the same day as plaintiff's termination, one other casual clerk was terminated, and this individual was also younger. (*Id.*) The remaining casual clerk employees terminated after plaintiff were all younger than plaintiff.[7] (*Id.*) Of the casual employees terminated throughout 2009, three were rehired later in the year to non-casual positions. (*Id.* at A-21) The parties agree that by September 25, 2009, all casual employees were terminated. (*Id.* at A-26; D.I. 27 at 2)

## E. EEOC Complaint

In 2009, plaintiff filed a complaint with the EEOC on the basis of age and disability discrimination. (D.I. 25 at A-17) The USPS filed a motion for a decision

---

[5] As plaintiff was employed as a casual clerk (not as a casual mail handler) at the time of her termination, the court need only address the circumstances of casual clerks.

[6] Although the parties do not dispute that ten casual clerk employees were terminated before plaintiff, the Equal Employment Opportunity Commission ("EEOC") Investigative Affidavit indicates twelve casual clerk employees were terminated on January 31, 2009. (*See* D.I. 25 at A-26; *see also* D.I. 28 at B-4)

[7] The parties dispute the number of casual clerk employees terminated after the plaintiff. Defendant indicates four casual clerk employees were terminated, whereas plaintiff indicates five were terminated. (*See* D.I. 24 at 3; *see also* D.I. 25 at A-26; D.I. 27 at 4; D.I. 28 at B-4)

5

without a hearing, and no response was received from plaintiff.[8] (*Id.*) The EEOC determined there was no genuine factual dispute and resolved the complaint in favor of the USPS. (*Id.* at A-18)

## III. STANDARD OF REVIEW

A court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Horowitz v. Fed. Kemper Life Assurance Co.*, 57 F.3d 300, 302 n.1 (3d Cir. 1995) (internal citations omitted). If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)). The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995). The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence

---

[8] A motion for a decision without a hearing does not weigh the evidence to determine the truth of the matter but only determines whether there is a genuine factual dispute. (D.I. 25 at A-18)

to enable a jury reasonably to find for the nonmoving party on that issue. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

With respect to summary judgment in discrimination cases, the court's role is "to determine whether, upon reviewing all the facts and inferences to be drawn therefrom in the light most favorable to the plaintiff, there exists sufficient evidence to create a genuine issue of material fact as to whether the employer intentionally discriminated against the plaintiff." *Revis v. Slocomb Indus.*, 814 F. Supp. 1209, 1215 (D. Del. 1993) (quoting *Hankins v. Temple Univ.*, 829 F.2d 437, 440 (3d Cir. 1987)).

## IV. DISCUSSION

### A. Discrimination Claims

Plaintiff's complaint alleges employment discrimination on the basis of age under the ADEA and on the basis of disability under the RA. (D.I. 1 at ¶ 13, 16) To prove an age or disability discrimination claim with respect to an adverse employment action, a plaintiff may pursue either a disparate treatment or disparate impact theory. Plaintiff at bar alleges a disparate treatment case for both age and disability.[9]  (*Id.* at ¶ 9) Therefore, she must show that the USPS discriminated against her on those bases and that her employment termination was a result of that discrimination. *Hazen Paper Co.*,

---

[9] A disparate treatment claim alleges that a plaintiff, as an individual, was treated unlawfully or "less favorably" with respect to her employment status. *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 609 (1993) (citing *Teamsters v. U.S.*, 431 U.S. 324, 335-36, n.15 (1977)). A disparate impact claim requires that an employer's action, while facially neutral, unlawfully impacts a particular group of employees. *Id.*

507 U.S. 604, 610 (1993); *see, e.g., Monaco v. Am. Gen. Assurance Co.*, 359 F.3d 296,

300 (3d Cir. 2004) (concerning an ADEA claim); *Keyes v. Catholic Charities*, 415 F.

App'x 405, 408 (3d Cir. 2011) (concerning an ADA claim).

## 1. Discrimination under the ADEA

The ADEA provides, in relevant part, that "[i]t shall be unlawful for an employer .

. . to discharge any individual or otherwise discriminate against any individual with

respect to his compensation, terms, conditions, or privileges of employment, because of

such individual's age." 29 U.S.C. § 623(a). Protection under the ADEA extends only to

individuals who are at least 40 years old. *Id.* at § 631(a).

In an ADEA discrimination claim, the Third Circuit has held that:

> [A] plaintiff may meet his or her burden by (1) presenting
> direct evidence of discrimination that meets the requirements
> of Justice O'Connor's concurring opinion in *Price
> Waterhouse v. Hopkins*, or (2) presenting indirect evidence
> of discrimination that satisfies the familiar three-step burden
> shifting framework identified in *McDonnell Douglas.*

*Monaco*, 359 F.3d at 300 (footnote omitted) (citing *Price Waterhouse v. Hopkins*, 490

U.S. 228, 261 (1989); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)), .

"Indirect evidence" was defined by Justice O'Connor as evidence requiring the decision-

maker to "infer" that an employer made an employment decision based on a "forbidden

factor." *Price Waterhouse*, 490 U.S. at 270. Thus, "direct evidence" is information that

does not require an inference. The parties agree that the *McDonnell Douglas* burden-

shifting framework applies to plaintiff's discrimination claims. (D.I. 24 at 9; D.I. 27 at 2,

6-8)

8

Under the *McDonnell Douglas* framework, plaintiff must first present a prima facie

case of discrimination. *Smith v. City of Allentown*, 589 F.3d 684, 689 (3d Cir. 2009). To

establish a prima facie case of discrimination, plaintiff must show that she: (1) is at

least 40 years old; (2) is qualified for the position in question; (3) suffered an adverse

employment action; and (4) was discriminated against on the basis of her age. *See*

*Robinson v. City of Philadelphia*, 491 F. App'x 295, 298 (3d Cir. 2012); *see also Gude v.*

*Rockford Ctr., Inc.*, 699 F. Supp. 2d 671, 679 (D. Del. 2010), *aff'd*, 393 F. App'x 838 (3d

Cir. 2010). This burden is not meant to be "onerous," and the fourth factor can also be

met by showing "non-members of the protected class were treated more favorably."

*Lyles v. Phila Gas Works*, 151 F. App'x 169, 171 (3d Cir. 2005); *see also Sempier v.*

*Johnson & Higgins*, 45 F.3d 724, 728 (3d Cir. 1995).

Assuming a prima facie case is established, the burden of production then shifts

to defendant to produce "a legitimate non-discriminatory reason for the adverse

employment action" taken with respect to the plaintiff. *Smith*, 589 F.3d at 690; *see also*

*Gude*, 91 F.3d at 679-680. If defendant meets its burden at the second stage of the

framework, the burden then shifts back to the plaintiff to show that a jury could find that

the defendant's reason is mere "pretext" for discrimination. *Smith*, 589 F.3d at 690.

Defendant concedes that the first three elements of the prima facie case are

established but disputes the fourth element – whether the evidence supports an

inference of age discrimination. (D.I. 24 at 10) Specifically, defendant asserts that

plaintiff must prove that she was replaced with someone younger. (*Id.* at 11) However,

the Third Circuit has explicitly held that "replacement" is not the standard for meeting

9

the fourth factor. *Sarullo v. USPS*, 352 F.3d 789, 797-98 n.7 (3d Cir. 2003) (finding the prima facie case is "flexible" and context-dependent). Plaintiff may prove the fourth factor in a variety of ways, including showing that a younger casual employee was retained instead of plaintiff, a younger employee was hired to replace her, or any information allowing an inference of age discrimination. *See, e.g.*, *Robinson*, 491 F. App'x at 298 (concerning evidence that younger employee was retained when plaintiff was laid off).

Plaintiff claims to present sufficient evidence to create a genuine issue of material fact regarding whether she was discriminated against on the basis of her age. Specifically, plaintiff asserts that the USPS's retention of younger casual employees beyond her termination date supports her contention. However, the casual employees retained after her departure were similarly let go. (D.I. 25 at A-26) There is no evidence that plaintiff's termination in the second of three waves of layoffs was connected to her age or considered by her supervisors when deciding the order for terminating the casual employees. Indeed, nine of at least ten individuals in the first wave of layoffs were younger than plaintiff. (*Id.*) Thus, plaintiff has failed to establish a prima facie case of age discrimination and defendant's motion for summary judgment is granted for this claim.[10]

## 2. Discrimination Under the RA and ADA

_____

[10] Even if this burden was met, the USPS has given a clear, lawful reason for plaintiff's termination – purposeful elimination of a category of temporary employees because of budget constraints – and plaintiff has neglected to provide any information as to why the court should find defendant's reason to be pretext for a discriminatory purpose.

10

The RA prohibits discrimination against individuals with disabilities and "expressly

makes the standards set forth in the 1990 Americans with Disabilities Act, 42 U.S.C. §

12101 et seq., applicable to federal employers." *Wishkin*, 476 F.3d 180, 184 (3d Cir.

2007) (finding the statute applies to USPS employees); *see also* 29 U.S.C. § 791(g)

(preempted on other grounds).  In alignment with the Americans with Disabilities Act

("ADA"), the RA requires that the ADA's standards be used to determine violations of

the RA.  *Id.*  The ADA, as amended by the ADA Amendments Act of 2008, prohibits

discrimination against "a qualified individual on the basis of disability in regard to job

application procedures, the hiring, advancement, or discharge of employees, employee

compensation, job training, and other terms, conditions, and privileges of employment."

42 U.S.C. § 12112(a).  The Third Circuit has held that the *McDonnell Douglas*

framework applies to ADA-based employment claims.  *Wishkin*, 476 F.3d at 184-85.  To

establish a prima facie case of discrimination, plaintiff must show that she: (1) has a

disability; (2) is qualified for the position in question; and (3)  was terminated or

prevented from doing her job anyway.  *Id.*

To meet the first requirement for a prima facie case of disability discrimination,

plaintiff must show that she has a disability.  The ADA provides that a disability is "a

physical or mental impairment that substantially limits one or more life activities of such

individual; a record of such an impairment; or being regarded as having such an

impairment."  42 U.S.C. § 12102(1).  Major life activities include "hearing."  *Id.* §

12102(2)(A).  An individual "regarded as having such an impairment" meets this

definition if she can establish that "she has been subjected to an action prohibited under

11

this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." *Id.* §12102(3)(A). "[M]erely having knowledge of the impairment, however, is insufficient to suggest that the employer considered or perceived the employee as disabled." *Wellman v. DuPont Dow Elastomers, LLC*, 739 F. Supp. 2d 665, 673-74 (D. Del. 2010) (citing *Reeves v. Johnson Controls World Serv.*, 140 F.3d 144, 153 (2d Cir. 1998).

In establishing the second factor under *McDonnell Douglas*, plaintiff must allege facts sufficient to show she is able to perform the tasks, duties, and responsibilities required of the position. *Simpson v. Potter*, 589 F. Supp. 2d 424, 432 (D. Del. 2008). The parties do not dispute that plaintiff has met this factor. (D.I. 24 at 8-9; D.I. 25 at A-10) The third factor requires plaintiff to show that she was terminated from her position as a result of her disability, meaning but-for her disability, plaintiff would not have been terminated. *Maynard v. Goodwill Indus.*, 678 F. Supp. 2d 243, 255 (D. Del. 2010).

The parties dispute whether the USPS was sufficiently aware of plaintiff's hearing loss such that it knew or regarded plaintiff as having a disability prior to her termination. (D.I. 25 at A-5, A-6) The record is clear that, while working at the USPS, plaintiff did not inform her supervisors that she had a disability through a doctor's note or other medical evaluation. Nonetheless, she points to a meeting with the New Castle facility postmaster where she informed him, "I ha[ve] a hearing problem." (*Id.* at A-6) Plaintiff's assertions that she repeatedly informed her supervisors she was unable to hear them suggest, as reviewed in the light most favorable to plaintiff, that the USPS might have been aware that plaintiff suffered from hearing loss. In any case, plaintiff never

12

requested an accommodation, even though she knew other workers were accommodated via sign language.  (*Id.* at A-9-A-10, A-26)

Regardless of whether the USPS knew of or regarded plaintiff as having a disability, plaintiff has failed to provide any evidence connecting her disability and her termination.  The evidence consistently indicates that plaintiff's position as a casual employee was eliminated from the New Castle facility for financial reasons and that all casual employees were terminated as a result.  Plaintiff has provided no evidence to suggest that she was terminated as a result of her disability.  In fact, when her direct supervisors recommended plaintiff be laid off in the first wave of casual employee terminations, Faison allegedly intervened to keep her employed past the first cut of casual employees, none of whom were disabled.  (*Id.* at A-26, A-30)  Therefore, plaintiff has failed to establish a prima facie case of disability-based discrimination.[11]

Defendant's summary judgment motion is granted for this claim.

## B. Harassment Claims

Plaintiff further alleges harassment on the basis of her age and disability.[12]  (D.I. 1 at ¶ 9)  The Supreme Court has not determined whether harassment under the ADEA or RA (pursuant to the ADA) is actionable.  *Walton v. Mental Health Ass'n of Se. Pa.*, 168 F.3d 661, 666 n.2 (3d Cir. 1999).  However, the Third Circuit has acknowledged

_____

[11] However, even if plaintiff had met the burden of establishing a prima facie case, she has not provided any information indicating why this court should find that the USPS's decision to terminate all casual employees due to budget constraints is mere pretext for disability-based discrimination.

[12] Although plaintiff does not discuss an age-based harassment claim in her answering brief, her complaint asserts "harassment on the basis of her disability and/or age."  (D.I. 1 at ¶ 9)

harassment in some circumstances if it creates a hostile work environment. *Id.* at 666-67.

### 1. Age-based harassment under the ADEA

Plaintiff's claim concerning harassment on the basis of age, in effect, is a hostile work environment claim. "To prevail on a hostile work environment claim, a plaintiff must show that [her] workplace was 'permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment.'" *Culler v. Sec'y of U.S. Veterans Affairs*, 507 F. App'x 246, 249-50 (3d Cir. 2012) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002). The Third Circuit has not formally recognized age-based harassment (or a hostile work environment claim on the basis of age) under the ADEA. *Lyles v. Phila Gas Works*, 151 F. App'x 169, 172 (3d Cir. 2005); *see also Slater v. Susquehanna Cnty.*, 465 F. App'x 132, 138 (3d Cir. 2012) (emphasizing the Court "assumed] . . . without deciding" whether an age-based harassment claim exists under the ADEA); *Blozis v. Mellon Trust of Del. Nat'l Ass'n*, 494 F. Supp. 2d 258, 272 (D. Del. 2007) (declining to recognize age-based harassment as a cause of action under the ADEA). In any event, plaintiff does not provide any evidence that her coworker's and supervisor's remarks and actions concerned her age. (D.I. 25 at A-5-A-7) Therefore, defendant's summary judgment motion is granted for this claim.

### 2. Disability-based harassment under the RA and ADA

In contrast, the Third Circuit has recognized harassment based on an individual's disability as an independent cause of action under the ADA if it creates a hostile work

14

environment.[13] *See Sconfienza v. Verizon Pa Inc.*, 307 F. App'x 619, 623 (3d Cir. 2008); *see also Walton*, 168 F.3d at 666-67. The Third Circuit has held that a plaintiff may establish an ADA hostile work environment claim by showing that: (1) she has a disability; (2) she was subject to harassment; (3) the harassment was due to the disability or a request for accommodation; (4) the harassment was sufficiently severe or pervasive to "alter the conditions of . . . employment and create an abusive working environment"; and (5) the employer "knew or should have known of the harassment and failed to take prompt effective remedial action." *Walton*, 168 F.3d at 667. To determine whether an environment is abusive, all of the circumstances of the harassment are considered, including: its frequency; its severity; whether it is physically threatening, humiliating, or merely offensive; and whether it unreasonably interferes with work performance. *Ulrich v. U.S. Sec'y of Veterans Affairs*, 457 F. App'x 132, 140 (3d Cir. 2012) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)). The Supreme Court has made it clear that a hostile work environment exists somewhere after mere offense but before "tangible psychological injury" occurs. *Harris*, 510 U.S. at 21. Behavior must be "sufficiently severe or pervasive to alter the victim's employment conditions." *Pa. State Police v. Suders*, 542 U.S. 129, 131 (2004) (citing *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)). Notably, isolated incidents and merely offensive language do not rise to the level of severe and pervasive abuse. *Hamera v. Cnty. of Berks*, 248 F. App'x 442, 425-26 (3d Cir. 2007) (citing *Walton*, 168 F.3d at 667).

---

[13] The Third Circuit has embraced disability-based harassment as a separate cause of action under the ADA due to the statute's language similarity to Title VII. *Walton*, 168 F.3d at 666-67.

15

Genuine issues of material fact remain concerning the first three requirements of *Walton*. Plaintiff has submitted the results of an audiometric test dated January 26, 2009 showing that she had a hearing disability at that time. (D.I. 28 at B1) However, defendant submitted testimony that the USPS did not know this information and did not regard plaintiff as having a disability throughout her employment there. (D.I. 25 at A-26, A-30) Plaintiff has also provided evidence, in the form of her own testimony and that of Pinkston, that she was screamed at, "hollered" at, made fun of, told "f*** you," referred to as a "Russian linebacker" due to her weight, called "trailer trash," and generally treated poorly by certain supervisors and one coworker. (*Id.* at A-4, A-5) Although many of the alleged remarks reference other matters (i.e., plaintiff's weight), viewing the evidence in the light most favorable to plaintiff, the screaming and yelling plaintiff tolerated may have been related to plaintiff's hearing difficulties. (*Id.* at A-9-A-10) Thus, there remain questions of material fact as to the first three factors of the prima facie case of disability-based harassment.

Regarding the fourth factor, the treatment of plaintiff was evidently humiliating and frequent enough that plaintiff cried on the job "a lot." (*Id.* at A-7) However, the evidence provided does not reveal severe and pervasive harassment. In a Title VII hostile work environment case, the Third Circuit held that continued incidents over a period of two years met the "pervasive" requirement. *Abramson v. William Paterson Coll.*, 260 F.3d 265, 279 (3d Cir. 2001). In the same case, "almost all of the incidents alleged" centered around plaintiff's religious observance of the Sabbath, causing

unreasonable interferences with plaintiff's job due to defendant's constant and intentionally created work conflicts. *Id.* at 279-80.

In contrast, the duration of plaintiff's alleged harassment is not evidenced and the only alteration in the normal functioning of the workplace indicated was one isolated incident with a supervisor that prompted plaintiff to speak with the postmaster. (D.I. 25 at A-6) Although that supervisor's treatment of her afterward allegedly became "worse," plaintiff acknowledged she did not attempt to speak with the postmaster again or otherwise alert the USPS about the situation. *(Id.* at A-7) Plaintiff does not testify that her treatment unreasonably interfered with her job performance or was physically threatening. Additionally, the "Certificates of Appreciation" and extra assignments she received (allowing her to earn extra income) indicate that her job performance was, if anything, exemplary and not affected by her disability or the harassment she alleges. *(Id.* at A-7, A-9) In sum, plaintiff's allegations only amount to offhand comments and an isolated incident – not a severe and pervasive atmosphere polluted by discriminatory conduct. Therefore, the fourth factor is not met and the court need not address the fifth.

Since, under the undisputed facts, plaintiff has not sufficiently presented a case meeting all five factors of *Walton*, defendant's motion for summary judgment as to disability-based harassment under the RA, pursuant to the ADA, is also granted.

## V. CONCLUSION

For the foregoing reasons, the court grants defendant's motion for summary judgment. An appropriate order shall ensue.